Thank you, Your Honor. May it please the Court, my name is John Seidlitz. I have the pleasure to represent Robert Febach before the Court today, arguing relative to his denial for Social Security disability benefits. The record will establish that Mr. Febach applied for benefits, alleging an onset of September of 2006. The ALJ found, and what is undisputed, is various limitations, severe impairments, including what was described as a broken right shoulder. He had a shoulder, he had a surgery, and it just doesn't heal. They talked about doing a nerve transposition, they were talking about doing a muscle, taking a muscle out. But it was described by the ALJ as a broken right shoulder, degenerative disc disease, obstructive sleep apnea, and obesity. What is ignored by the ALJ, both in his findings of impairments and in his descriptions of limitations to the vocational consultant, and in terms of ignoring Robert Febach's description of his own limitations, are any mental impairments, including depression. Now, the briefs are replete with the records of treatment for depression. He treats at the VA. He begins in April of 2007 with a diagnosis, and treatment is not regular. He's back in July of 2007, and he's medicated, having a hard time sleeping. Beginning in June of 2009, he treats now over the course of the next 24 months. He's medicated over the next 24 months. They're changing medications over the next 24 months. During that period of time, he takes GAFs. GAFs are Global Assessment of Functioning. They're a snapshot. When you're in front of me, the physician, the counselor, the licensed nurse practitioner, the PhD psychologist, as you're sitting here today, here's what I'm assessing your function is. So, getting to the specific issues that are raised in your appeal, what did the ALJ do wrong, specifically? Well, what the ALJ did is decline at all to accept as an impairment depression. It's just, it's not included as an impairment, and he ignores the VA records, finding it transcript 24. But didn't the ALJ take into account that your client was a very active bowhunter, and did a lot of bowhunting during this very time, which was a counterindication that he was under severe depression? I can't answer that. I don't think that's accurate. I think what is described by Robert Feebeck in terms of hunting is he spent 90 days up in Lincoln, Montana, about as isolated as you can get. He's about 35 miles from Stemple Pass, where the Unabomber's cabin is. This is isolated. He describes his hunt. But it's also very mountainous, isn't it? I mean, these are animals that live at higher elevation. Well, and when he talks about what he gets, what he talks about is he will hike up to a vantage point. The ALJ made no attempt to say, is that an hour of walking? Is that a half an hour? What was your elevation height? So we don't know if he drives to the end of one of the Forest Service roads and simply walks. But he also has a fifth wheeler that he drives out into this remote area, and he camps by himself for 90 days. He isolates. Why can't the ALJ consider that evidence or his testimony as evidence that he would of necessity have to do a number of things for himself that requires basically more than a sedentary activity? I think what was described was an isolation. He's living in that camper. It takes nothing to just drive it up and park it away from people. I'm sure you've done camping. I've done camping. You've got to lift propane containers. You've got to lift food. You've got to lift pots and pans. You've got to carry water. You've got to refill the generator with gasoline, all of which requires more than sedentary lifestyle. And none of those activities were described in the record at all in terms of whether he drives up to a gas station and somebody fills his propane, fills the generator, all of those kinds of things, fills the water tank right at a gas station. There's no testimony at all about what he was doing. Did the ALJ – I mean, the ALJ did rely on the hunting to question his physical impairments. Did he rely on it to question his – did he mention the depression at all? All he mentions about the depression is at 24 he says he's ignoring the disability rating from the VA relative to the mental limits, the GAFs, all the GAFs of 52 showing moderate at one time severe but at least moderate mental limitations because they do not indicate a complete inability to work. So I'm just going to ignore those. Then he goes on to say, and he got a VA disability for sleep apnea in 05, and he worked for two more years. So I'm going to ignore the 2009 20 percent depression disability that the VA gave, and there's no explanation for why that happens. And so I think to answer your question, I think what happens is in terms of this camping, this isn't the fun camping where there's a whole group go out or at least more than one. No, he's all by himself. That's the concern I have. This is isolation. This is a person in depression wanting to get away from family. I mean, maybe there was a technical problem with the depression, but why isn't the hunting a basis for disbelieving what the ALJ said he was using it to disbelieve, i.e. that he was really in such terrible pain and couldn't function? I think it's because this court has required specificity so that in reviewing, you can determine. Well, wasn't he specific about that? I mean, he may not have dealt with the depression, but wasn't he specific about that? No, because you have no idea how often he shot an animal. He described having help pull it out, but you don't know in 90 days if he got an animal. All we know is he said We know he didn't. I thought he didn't get any animals for years or something. And that could be. I'm focusing on when he was talking about those specific 90 days. His description was, I climbed to a vantage point and I would either sit or stand and look for about an hour. What about the evidence in the record that he basically didn't comply with the medical treatment that was afforded him? He stopped taking the medication. I think if you look through the records and I have the citations, they're in the briefs. But beginning from June of 09 up until March of 11, the references from the VA records in the brief show through that two year period of time he was taking the medications. How do we know? Because he talks about having side effects. March of 11, the medication was not working. He was having anger problems, excess talking. He at some time starts having some of the side effects from the depression medication in the time frame. I was referring, I think, specifically to the pain medication testimony because he testified, did he not, that he didn't want to take the opiates or any of the pain killers because he feared addiction. And so he took Advil and ibuprofen. And medical marijuana. And medical marijuana. And didn't the ALJ find that if that was the case, then the pain couldn't have been as severe as indicated because he didn't need the stronger medications to deal with it? I don't know if that's the case because he had authorization for medical marijuana. So someone has determined and signed off. But that was only relatively recently, within a year or so of the hearing, was it? It was, but it was certainly... And he's claiming disability back to 2006. Correct. Okay. Correct. And in that time frame, he'd had surgery on the shoulder and was still recovering from the surgery. And the surgeon's limitations specifically precluded the finding he could return to his past job, which the ALJ found. Well, but that doesn't answer the question as to whether or not there might be less strenuous jobs for which, involving a light or a moderate exertional level, that he could perform. And that would be... That's the issue, is it not? That was the issue in front of the ALJ, and he should have focused on that. My time is up. Thank you. Thank you, Counsel. We'll hear from the government. May it please the Court. My name is Jessica Milano. I'm here on behalf of the Commissioner. Your Honors, the question before the Court is whether the ALJ had substantial evidence to support his decision. In this case, Mr. Febok claimed disability based upon shoulder problems, lack of motivation due to depression, and several other sleep apnea and social isolation. However, during the contemporaneous time period, Mr. Febok went on long-term hunting trips for weeks at a time. Mr. Febok applied for more than 20 jobs. I don't understand the relevance of that. I mean, if he wasn't making any money and he tried to get jobs, he didn't get jobs. I think, didn't he work a day or two and wasn't able to do it? Your Honor, it goes to show that he had more motivation than he claimed. Mr. Febok testified that he wasn't motivated enough to brush his teeth. However, he was motivated enough to apply for multiple jobs. It simply shows that when it came to motivation, it was what he selected. If he didn't apply for jobs, then you would say that he didn't want to work and this was all simply, it seems to me it's between a rock and a hard place. Any of these applicants are, if they don't apply for jobs, then that's evidence that they're malingering. Your Honor, the ALJ cited to the evidence of Mr. Febok applying for jobs not only because it shows potential that he could do more, but because it was inconsistent with his statements that he couldn't do anything. It showed that Mr. Febok. You mean what he could do was fill out pieces of paper to apply for jobs? Is that the point? Your Honor, Mr. Febok was. Not that he could do the jobs, but that he could fill out the pieces of paper? No, he was actually doing quite well. He received multiple interviews at the January 2010 hearing before the administrative law judge. He testified. None of that is evidence that he could have done any of those jobs. Under Molina, a recent Ninth Circuit case, there's multiple reasons to talk about a claimant's daily activities. One is to show that a claimant could do it. The other reason is simply to show that their testimony is not entirely credible. So that is the context here. It's not because he was filling out job applications that that makes him able to do a job. It shows that he believes he can do more than he's actually testifying to. There's multiple other inconsistent statements simply if you just look at only the hearing testimony. Mr. Febok testified that he could not sit or stand for more than half hour at a time. That was at page 47. But he also testified at page 66 through 68 that he would hunt for up to two hours at a time, hiking up to a high vantage point and then spending an hour looking for game while sitting or standing. Again, it simply shows that Mr. Febok … Well, I don't understand how that's inconsistent. In other words, he said he could not sit or stand for more than a half hour, so he could sit for a half hour and stand. I mean, half of one or the other, right? So how is that inconsistent? Your Honor, he said that he would spend up to an hour doing this. And this also shows … He didn't say he would spend up to an hour standing or up to an hour sitting. I suppose that's true that he didn't specify whether or not he alternated. I don't know. But, again, the fact is, is he is out bow hunting for multiple hours at a time. He was bow … I mean, his main physical impairment was his shoulder, and he did say that he wasn't … I mean, you would think when somebody's bow hunting, they're bow hunting, but apparently that was not what he was doing. He was hunting … He had it set up so that he could hunt with his feet. Is that right? I believe he used an apparatus that he could load his bow … So it's not inconsistent with his shoulder and his pannier shoulder. I suppose not necessarily, but it is inconsistent with the fact that he says he cannot do any activities whatsoever. But it's still … I mean, I looked at the specially modified bow, and he testified it was an 80-pound draw. So he's got to exert some level of physical exertion in order to draw the thing, even if he's using his left shoulder more than … Your Honor, I agree. He, at the hearing, also testified that he could lift up to 50 pounds so long as it was close to his body. So Mr. Peebok himself admitted as long as he's lifting close to his body, he could lift up to 50 pounds. The ALJ took this into account and specifically integrated that into the residual functional capacity finding. In other words, the ALJ's findings are consistent with things that he admitted and things that he was doing. I'd also like to address the Step 2 issue. As Your Honors … Well, I don't … I mean, I almost understood it to have been abandoned. I mean, whether he called it severe or didn't call it severe, the question is, did he use it for anything? Correct, Your Honor. And here the ALJ did. The ALJ discussed it extensively, not just … But he didn't put it into the hypotheticals for the vocational expert, did he? I believe he did. He stated specifically that Mr. Peebok could not tolerate work, which requires him to deal with large numbers of people at once or with a constant stream of people. That's all, but he didn't say anything about lethargy or motivation or anything of that kind. Your Honor, the ALJ found that those were not supported by the record of evidence. Where did he find that, by the way? I apologize? Where did he find that? I understand you're saying that it's inconsistent, but where did the ALJ find that? The ALJ discusses at page 21 inconsistencies, and the ALJ does a very good job of taking one of Mr. Peebok's statements and then talking about evidence that is contrary. Okay, but the specific one that we were just talking about, where does he say that? I see. He said he had no motivation to anyway. The claimant testified he has no motivation to do anything and then contradicted himself with a recitation of all the jobs he recently applied for, both in telecom industry and at the railroad and at Northwest Energy. So that's one instance of the lethargy and motivation the ALJ found was contradicted. So the ALJ took into account all of the credible limitations in terms of Mr. Peebok's depression, and the ALJ also gave good reasons that he did not give greater weight to the VA's disability rating. The ALJ stated that the rating was not supported by the objective evidence. The ALJ pointed out that Mr. Peebok continued to work for several years after receiving the ratings, and even the VA rating itself did not show complete inability to work. But the standard isn't that it has to show complete inability to work by itself. Right, Your Honor, but he did work for several years after. So your point is even though they gave him a 20% disability rating, that wasn't enough to prevent him from doing any work at all? Yes, Your Honor. Anything further? No, Your Honor. Very well. The case just argued will be submitted for decision.
judges: O'scannlain, Berzon, Tallman